**NOT PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 22-2799
_____

UNITED STATES OF AMERICA

v.

ANTHONY SMITH,
Appellant
_____

On Appeal from the United States District Court
for the Western District of Pennsylvania
(D.C. No. 2-19-cr-00008-044)
District Judge: Honorable J. Nicholas Ranjan
_____

No. 22-2844
_____

UNITED STATES OF AMERICA

v.

ANTHONY SMITH, a/k/a ANT, a/k/a LIL PO,
Appellant
_____

On Appeal from the United States District Court
for the Western District of Pennsylvania
(D.C. No. 2-13-cr-00057-003)
District Judge: Honorable J. Nicholas Ranjan
_____

Submitted Under Third Circuit L.A.R. 34.1(a)
April 18, 2024

Before: HARDIMAN, SMITH, and FISHER, *Circuit Judges*.

(Filed: April 22, 2024)

_____

OPINION[*]

_____

HARDIMAN, *Circuit Judge*.

Anthony Smith appeals his judgment of conviction and sentence based on his role in a drug-trafficking conspiracy.[1] He primarily challenges the sufficiency of the evidence at trial. He also alleges procedural errors and prosecutorial misconduct. We will affirm.

I

Shortly after being released from prison to a Pittsburgh halfway house in May 2017, Smith met Noah Landfried, the kingpin of an extensive drug-trafficking organization in western Pennsylvania. Toward the end of the year, Landfried began selling Smith greeting cards saturated in K2, a synthetic drug designed to mimic marijuana. Smith resold these K2-laced cards for hundreds of dollars each to prisoners he knew, as well as to some of his childhood friends. After a federal investigation uncovered evidence of Smith's role in selling K2, he was indicted for conspiracy to distribute and possess with intent to distribute Schedule I, II, and III controlled substances between

---

[*] This disposition is not an opinion of the full Court and pursuant to I.O.P. 5.7 does not constitute binding precedent.

[1] This conviction is docketed at Case No. 22-2799. Smith also appealed the revocation of his supervised release, which is docketed at Case No. 22-2844. Smith did not raise any argument pertinent to the supervised release appeal.

2

January 2017 and January 2019, in violation of 21 U.S.C. § 846. After ignoring text messages from his probation officer ordering him to turn himself in, Smith was arrested in October 2019.

In December 2021, Smith was tried before a jury along with Landfried and Michel Cercone, another co-conspirator. While testifying at trial, multiple co-conspirators discussed Smith's involvement in the distribution of K2. In addition to checks that prisoners had mailed to Smith, the Government presented test results confirming the K2 associated with Landfried contained 5F-MDMB-PINACA, a Schedule I controlled substance since April 10, 2017. Smith testified that he bought "a few" K2-laced greeting cards from Landfried about 10 different times. App. 1167. He even admitted that he knew it was "a crime," but that he wanted "to make a few extra bucks." App. 1160–61.

The jury convicted Smith. At sentencing, the District Court overruled Smith's objection to the drug-quantity calculation in the Presentence Investigation Report (60 to 80 kilograms of converted drug weight). The District Court then sentenced Smith to 51 months' imprisonment followed by 6 years' supervised release. Smith timely appealed his conviction and sentence for the drug-trafficking crime.[2]

## II

Smith argues that the jury's verdict should be overturned "[b]ecause no evidence was established at trial to show that . . . Smith knew that what he possessed was a substance listed on the schedules, or the identity of the substance he possessed." Smith

---

[2] The District Court had jurisdiction under 18 U.S.C. § 3231. We have jurisdiction under 28 U.S.C. § 1291 and 18 U.S.C. § 3742.

Br. 35. We review this argument for plain error because Smith did not preserve it in the District Court. *United States v. Johnson*, 19 F.4th 248, 255 (3d Cir. 2021).

Smith contends that the conspiracy's underlying offense, 21 U.S.C. § 841(a)(1), requires the Government to show he was either "aware that what he purchased contained the specific substances listed" in the indictment or "knew what he possessed as K2 was a controlled substance . . . at the time that he possessed it." Smith Br. 28. He is incorrect. The Government had to prove only that Smith knew K2 was "some unspecified substance listed on the federal drug schedules." *McFadden v. United States*, 576 U.S. 186, 192 (2015). Smith's admissions at trial demonstrate that he realized as much. Smith not only knew that selling K2 was a crime, but he understood that K2 produced a "high" similar to marijuana. App. 1157. Smith also repeatedly attempted to conceal his activities from prison officials—for instance, by disguising his K2-laced greeting cards as ordinary cards. And he tried to avoid law enforcement by absconding after he was indicted. All of this provided strong evidence that Smith possessed the requisite mental state under 21 U.S.C. § 841(a)(1). *See McFadden*, 576 U.S. at 192 n.1.

Because a rational juror could conclude that Smith conspired to distribute a Schedule I controlled substance, namely 5F-MDMB-PINACA, Smith cannot show, as is required under plain-error review, that the jury's verdict was "devoid of evidence" or supported by evidence "so tenuous" that his conviction was "shocking." *United States v. Jabateh*, 974 F.3d 281, 300 (3d Cir. 2020).

III

Smith next argues that he was unlawfully subjected to a variance or constructive

4

amendment[3] because: (1) the Government "was permitted to refer to multiple synthetic cannabinoids listed" in the indictment by a single name (K2) throughout trial, even though they were scheduled at different times under the Controlled Substances Act, Smith Br. 35; and (2) the District Court's jury instructions "implicated all federal drug abuse laws, including the Analogue Act," which was not charged in the indictment, Smith Br. 37. We review these arguments for plain error because Smith raises them for the first time on appeal. *United States v. Vosburgh*, 602 F.3d 512, 531 (3d Cir. 2010).

While counsel for the Government—and Smith—did refer broadly to specific synthetic cannabinoids as K2 throughout the trial, Smith's suggestion that the jury might have convicted him based on a controlled substance not listed in the indictment is speculative. "[W]e presume that the jury followed the District Court's instructions," *United States v. Fallon*, 61 F.4th 95, 113 (3d Cir. 2023), and the District Court carefully instructed the jury that: (1) the charges against Smith were "contained in the indictment," App. 404–05, which did not mention analogue substances; and (2) Smith could be convicted only if he conspired to possess or distribute something that was "a Schedule I or Schedule II controlled substance *at the time*," App. 1274 (emphasis added). Combined with the fact that no trial witness mentioned K2 analogues, neither the evidence presented

---

[3] Smith seems to treat these distinct legal concepts as interchangeable. *Compare* Smith Br. 28–36, *with United States v. Castro*, 776 F.2d 1118, 1121–22 & n.1 (3d Cir. 1985). But "[u]nlike a constructive amendment, a variance can result in a reversible error only if it is likely to have surprised or otherwise has prejudiced the defense." *United States v. Daraio*, 445 F.3d 253, 262 (3d Cir. 2006). Because Smith makes no arguments as to surprise or prejudice, we evaluate his arguments here as implicating only constructive amendment.

by the Government nor the instructions provided by the District Court suggested that Smith could have been convicted unless the jury found he conspired to distribute controlled substances.[4]

IV

Smith briefly makes two additional arguments. First, he claims the Government unlawfully prejudiced him during cross-examination by implying he had previously made a false statement to the District Court, specifically that he "wasn't in possession of any drugs or weapons." Supp. App. 33. We disagree. The Government had a good-faith basis to question Smith on the contradiction between this prior statement and his repeated admissions at trial that he had previously possessed K2. *See United States v. Werme*, 939 F.2d 108, 117 (3d Cir. 1991). So it was not an "egregious error or a manifest miscarriage of justice," as is necessary to demonstrate prosecutorial misconduct under plain-error review. *United States v. Brennan*, 326 F.3d 176, 182 (3d Cir. 2003) (cleaned up).

Second, Smith contends that the District Court erred in its calculation of the drug weight under the United States Sentencing Guidelines. It did not. Smith admitted to buying "a few" K2-laced greeting cards from Landfried about 10 different times. App.

---

[4] Smith also argues that a different instruction provided by the District Court during a later trial of co-defendants, "charged under the same count, pursuant to the same operative indictment," was "more accurate of the crime charged." Smith Br. 38–39. This argument also fails. Unlike Smith's jury, *see* Supp. App. 34–36, the jury in this later trial expressed confusion as to whether "generic K2 [would] be an acceptable substitute to determine proof of knowledge," App. 261, thus justifying a clarifying instruction to allay confusion. And even if the District Court erred in failing to provide this purportedly "more accurate" instruction, there is nothing to suggest that such error "prejudiced the outcome . . . or seriously affected the fairness, integrity, or public reputation of the judicial system." *United States v. Olano*, 507 U.S. 725, 735–36 (1993).

1167. Because it was permitted to "estimate the total drug quantities involved in [the] conspiracy based on evidence of [the] average drug transactions during the conspiracy," *United States v. Gibbs*, 190 F.3d 188, 219 (3d Cir. 1999), the District Court essentially accepted the Government's proposed methodology: multiplying the weight of a standard greeting card (20 grams) by the number of cards Smith admitted to purchasing from Landfried (2 cards multiplied by 10 purchases for a total of 20 cards); and then multiplying that amount by 167 grams of converted drug weight pursuant to U.S.S.G. § 2D1.1, cmt. n.8(D). This calculation yielded 66.8 kilograms of converted drug weight, in line with the range of 60 to 80 kilograms included in the Presentence Investigation Report. None of the factual findings underlying this calculation was clearly erroneous. *See United States v. Rodriguez*, 40 F.4th 117, 120 (3d Cir. 2022). We thus reject Smith's claim of error at sentencing.

\* \* \*

Smith was convicted by a jury after a fair trial in which the Government presented ample evidence that he conspired to distribute a Schedule I controlled substance. Because none of his claims of error is persuasive, we will affirm the judgment of conviction and sentence.